UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MARIO AZEVEDA,<br><br>Plaintiff,<br><br>v.<br><br>COMCAST CABLE COMMUNICATIONS LLC, et al.,<br><br>Defendants. | Case No. 5:19-cv-01225-EJD<br><br>**ORDER DENYING MOTION TO REMAND; GRANTING MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. Nos. 19, 20 |

Plaintiff moves for this case to be remanded claiming this Court lacks subject-matter jurisdiction. Defendants separately move to compel arbitration and dismiss the putative class action because Plaintiff agreed to arbitrate employment-related disputes with Defendants individually. The Court finds this motion suitable for consideration without oral argument. *See* N.D. Cal. Civ. L.R. 7-1(b). Having considered the Parties' papers, the Court **DENIES** the motion to remand and **GRANTS** the motion to compel arbitration.

I.  **BACKGROUND**

   A.  **Factual Background**

On January 30, 2019, Mario Azeveda ("Plaintiff") filed this putative class action in the Santa Clara County Superior Court of the State of California asserting that Comcast Cable Communications, LLC and Comcast Cable Communications Management, LLC ("Defendants") violated federal and state laws. Notice of Removal to Federal Court, Ex. 1 ("Compl."), Dkt. 1. Plaintiff worked for Defendants, in California, from February 2005 through May 2016. *Id.* ¶¶ 8, 23; Declaration of Lynn Collins ("Collins Decl.") ¶ 5, Dkt. 19.

### 1. Claims

Plaintiff alleges violations of the Fair Credit Reporting Act ("FCRA"), which occurred when Defendants obtained background checks for Plaintiff's employment. He asserts analogous California state law claims under Investigative Consumer Reporting Agencies Act ("ICRAA"), Consumer Credit Reporting Agencies Act ("CCRAA"), and unfair competition law ("UCL"). Plaintiff also included claims that Defendants failed to provide meal periods, rest periods, pay hourly and overtime wages, accurate written wage statements, and timely pay all final wages.

Plaintiff claims that Defendants routinely acquired consumer, investigative, and credit reports (*i.e.*, credit and background reports) to conduct background checks on Plaintiff and other prospective, current, and former employees. Compl. ¶ 2. Defendants then used information from the reports in their hiring process without providing or obtaining proper disclosures/authorizations in compliance with federal and state law. *Id.*

Plaintiff alleges two FCRA claims. First, that Defendants disclosures did not meet the "clear and conspicuous" and "stand alone" writing requirement. *Id.* ¶¶ 48–63. Second, that Defendants failed to give proper "summary of rights" as required by 15 U.S.C. § 1681d(a)(1) and 15 U.S.C. § 1681g(c). *Id.* ¶¶ 66–76. These violations caused Plaintiff to have his "privacy and statutory rights invaded in violation of the FCRA." *Id.* ¶¶ 62, 65. He seeks "all available remedies" including "statutory damages and/or actual damages." *Id.* ¶¶ 63, 65. Plaintiff then alleges analogous violations of California privacy law and other labor laws, and contends he lost "money or property" as a result of Defendants' misconduct. *Id.* ¶ 181.

### 2. Arbitration Program

In September 2013, Defendants "rolled out" an alternative dispute resolution program called "Comcast Solutions" to California region employees, including Plaintiff. Collins Decl. ¶ 3. Comcast Solutions is designed to make it easier for employees to resolve legal claims. It specifies a three-step procedure for resolving disputes between Comcast and its employees. *Id.*, Ex. 1 at 2; Ex. 2 at 4; Ex. 10 at 5. First, an internal "Comcast Solutions Lead" reviews the claim to determine if it is a covered legal claim. *Id.*, Ex. 2 at 4. Covered legal claims include "[m]ost claims that

Case No.: 5:19-cv-01225-EJD
ORDER DENYING MOTION TO REMAND; GRANTING MOTION TO COMPEL
2

assert a violation of law relating to [] employment." *Id.*, Ex. 3 at 3; *see also id.* (listing a non-exhaustive list of covered claims). Claims, however, pertaining to the unauthorized use or disclosure of confidential, trade secret or private information under statutory or common law are not covered claims (under this 2013 agreement). *Id.* at 4. Comcast Solutions covers claims brought against both Defendants. *Id.*, Ex. 2 at 1. If it is a covered claim, the Comcast Solutions lead will work with the employee and Comcast Cable representatives to develop a satisfactory solution. *Id.*, Ex. 2 at 4–5.

Second, if an employee is unsatisfied with the proposed solution, they may seek non-binding mediation through an outside, professional dispute resolution organization, such as the Judicial Arbitration and Mediation Services organization ("JAMS") or the American Arbitration Association ("AAA"). *Id.*, Ex. 2 at 5. The employee does not have to pay any fees in connection with mediation and both sides have input into selecting the mediator. *Id.*, Ex. 3 at 3.

Finally, if the employee is still not satisfied, they may request a binding, two-day arbitration hearing through JAMS or the AAA before a mutually selected arbitrator. *Id.*, Ex. 2 at 6. The employee is required to pay (at most) a $150 arbitration initiation fee, which is refunded if they prevail on any portion of their claim. *Id.*, Ex. 2 at 7.

Comcast provided employees information about this program in both hard-copy and electronic form and reminded employees about the opt-out deadline (see *infra*). *Id.*, Ex. 5–8. Plaintiff received these materials. *See id.*, Ex. 6 (mailing form sent to Plaintiff by first-class mail); *Id.*, Ex. 7 (email sent to Plaintiff regarding program); Ex. 8 (electronic "read-receipt" indicating receipt of program materials). Plaintiff did not opt out of the program; thus, he agreed to participate in it. *Id.* ¶ 13; *see also* Supplemental Declaration of Lynn Collins ("Supp. Decl.") ¶ 2, Dkt. 29-1 (detailing the number of people that have opted out).

In late 2015, Comcast revised certain aspects of the program. *Id.*, Ex. 11. These changes were published on the internal employee website, which all employees can access. Among other things, the change allowed employees more flexibility as it let them skip the first two steps before pursuing arbitration. *Id.* It also removed the exception about excluding claims "for breach of data

Case No.: 5:19-cv-01225-EJD
ORDER DENYING MOTION TO REMAND; GRANTING MOTION TO COMPEL
3

privacy." *Id.*, Ex. 10 at 3. Employees were advised that if they wished to remain under the 2013 Program Terms, they should contact Comcast Solutions by phone or email. *Id.*, Ex. 11 ("If you need additional time to review the enclosed documentation and make your decision, no problem! Just contact the Comcast Solutions Team . . . ."). Plaintiff did neither. *Id.* ¶ 16.

In January 2016, Comcast issued a revised Employee Handbook. *Id.* ¶ 17. Employees were required to review the Handbook and related content concerning the 2015 Program changes. *Id.* Employees were required to electronically acknowledge that they had read and understood the changes. *Id.*; *see also id.*, Ex. 12 at 2. Plaintiff acknowledged reading and understanding the 2016 Employee Handbook and 2015 Program changes. *Id.* ¶ 17.

The relevant terms of the agreement are as follows:

1. **Class Action Waiver.** The Comcast Solutions Program includes a class action waiver, which, in the 2013 agreement, is set apart from the other text and bolded. It states

   > **If you agree to participate in the program, both you and the company waive the right to bring a civil action or have a jury trial for any covered legal claims. You also waive the right to bring or participate in a class action or collective or representative action on covered legal claims. All covered claims will be handled through the three-step Comcast Solutions process; both you and the company will be bound by the final decision of the arbitrator.**

   *Id.*, Ex. 1 at 8; *see also id.*, Ex. 2 at 7 ("As part of this Program . . . [you] waive the right to . . . file, bring, or maintain any Claims covered by the Program on a class action basis, collective action basis, or representative action basis."); *Id.*, Ex. 10 at 9.

2. **Arbitrability.** To the extent there is a question about whether an issue is arbitrable, the Program specifies that the arbitrator will decide the issue. It states:

   > Any issue concerning arbitrability of a particular issue or claim pursuant to the arbitration agreement . . . shall be resolved by the Arbitrator, not the court.

   *Id.*, Ex. 2 at 8.

3. **Opt-Out.** If an employee does not want to participate in Comcast Solutions, they can "opt out" by submitting an Opt Out Request Form by a certain date (about five weeks after

Case No.: 5:19-cv-01225-EJD
ORDER DENYING MOTION TO REMAND; GRANTING MOTION TO COMPEL
4

notification of the program). Collins Decl. ¶¶ 7, 13, 16.

Before filing this motion, Defendants' counsel sent an arbitration demand letter to Plaintiff's counsel describing Comcast Solutions and requesting Plaintiff honor his commitment to arbitrate this dispute. Declaration of Daryl S. Landberg ("Landy Decl.") ¶ 2, Ex. 13. The parties met and conferred by phone, during which Plaintiff's counsel expressed that Plaintiff was not willing to arbitrate his claims because: (1) Comcast Solution's three-step dispute resolution process is substantively unconscionable; (2) Comcast Solutions does not encompass the FCRA and related state law claims because the program excludes "[c]laims for . . . unauthorized use or disclosure of confidential, trade secret or private information under statutory or common law;"[1] and (3) Comcast Solutions' provision that waives an employee's right to bring a representative action includes claims under the California Private Attorneys General ("PAGA")[2], rendering the agreement substantively unconscionable. *Id.*, Ex. 14; Arbitration Mot. at 8.

### B. Procedural Background

On March 5, 2019, Defendants removed this action to federal court, invoking federal-question jurisdiction over the FCRA claims and supplemental jurisdiction over the other state-law claims.[3] *See* Dkt. 1. Plaintiff moves to remand, arguing that because he lacks Article III standing for his FCRA claim, removal was improper as this Court lacks subject-matter jurisdiction. *See* Pl. Motion to Remand ("Remand Mot."); Dkt. 20. On June 28, 2019, Defendants filed their opposition to the motion to remand. Opposition to Remand ("Remand Opp."), Dkt. 28. Finally, on July 12, 2019, Plaintiff filed a reply regarding his motion to remand. Reply re Motion to Remand ("Remand Reply"), Dkt. 30.

---

[1] Notably, the 2015 amendments to the Program removed language that excluded claims for unauthorized use or disclosure of confidential, trade secret, or private information. Landy Decl., Ex. 15.
[2] This Court does not address this argument because no PAGA claims are presented. Arbitration Reply at 13; *Alvarado v. Lowe's Ctrs., LLC*, 2018 WL 6697181, at *3 (N.D. Cal. Dec. 20, 2018) (noting that because Plaintiff did not allege a PAGA claim, it is irrelevant whether a PAGA waiver is unconscionable).
[3] Defendants also invoked Class Action Fairness Act ("CAFA") jurisdiction. *See* 28 U.S.C. § 1332(d). Because this Court concludes it has federal-question and supplemental jurisdiction, it does not reach any CAFA arguments.

Case No.: 5:19-cv-01225-EJD
ORDER DENYING MOTION TO REMAND; GRANTING MOTION TO COMPEL
5

Defendants moved on June 6, 2019, to compel arbitration on an individual basis and to dismiss the putative class claims, pursuant to its arbitration agreement with Plaintiff. Motion to Compel Arbitration ("Arbitration Mot."), Dkt. 19. Plaintiff filed an opposition to this motion on June 27, 2019. Opposition re Motion to Compel Arbitration ("Arbitration Opp."), Dkt. 26-1. Defendant filed a reply on July 11, 2019. Reply re Motion to Compel Arbitration ("Arbitration Reply"), Dkt. 29.

## II. MOTION TO REMAND

### A. Legal Standard

Removal of a civil action from state to federal court is appropriate only if the federal court has subject-matter jurisdiction over the matter. 28 U.S.C. § 1444(a). If a case is improperly removed, "the federal court must remand the action because it has no subject-matter jurisdiction to decide the case." *ARCO Envtl. Remediation, LLC v. Dep't of Health & Envtl. Quality of the State of Mont.*, 213 F.3d 1108, 1113 (9th Cir. 2000); *see also* 28 U.S.C. 1447(c). The burden to establish that jurisdiction exists rests upon the party asserting jurisdiction. *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009). The "strong presumption" against removal jurisdiction means that the court "resolves all ambiguity in favor of remand to state court." *Id.* (quoting *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (per curiam)).

Article III of the United States Constitution limits federal courts' subject-matter jurisdiction to actual "cases" and "controversies." U.S. Const. art. III, § 2. To satisfy the case-or-controversy requirement, a plaintiff must have standing to bring a claim. *See, e.g.*, *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014); *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Article III standing requires that a plaintiff have: (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) is likely to be redressed by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). To establish an injury in fact required for Article III standing, "a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent." *Spokeo*, 136 S. Ct. at 1548. For an injury to be "particularized" it "must

affect the plaintiff in a personal and individual way." *Id.*; *see also Valley Forge Christian Coll. v. Ams. United for Separation of Church and State*, 454 U.S. 464, 472 (1982) (standing requires that the plaintiff "'personally has suffered some actual or threatened injury'"). A "concrete" injury must be "*de facto*;" it must be "real" and "actually exist." *Spokeo*, 136 S. Ct. at 1548.

**B. Discussion**

Here, Plaintiff moves to remand this case on the grounds that there is no subject-matter jurisdiction because Plaintiff failed to sufficiently allege Article III standing. Remand Mot. at 8–9. Plaintiff contends he has only asserted a "bare procedural violation," and thus has not asserted any concrete injury as to his FCRA (or other) claims. *Id.* at 8.

Plaintiff's first cause of action concerns a violation of FRCA Section 1681b(b)(2)(A), which "prohibits an employer from obtaining an applicant's consumer report without first providing the applicant with a standalone, clear and conspicuous disclosure of its intention to do so." *Gilberg v. Cal. Check Cashing Stores*, 913 F.3d 1169, 1173 (9th Cir. 2019); *see also* Compl. ¶¶ 43–63. His second cause of action concerns a violation of FRCA Sections 1681d and 1681g(c). Compl. ¶¶ 66–67. Section 1681d requires the consumer be notified that she may make a written request for the report. 15 U.S.C. § 1681d. Section 1681g(c) requires the provision of a "summary of rights." *Id.* § 1681g(c).

Generally, pleading a "bare procedural violation" of the FCRA, divorced from "any concrete harm," is insufficient to satisfy the injury-in-fact requirement. *Syed v. M-I, LLC*, 853 F.3d 492, 499 (9th Cir. 2017) (quoting *Spokeo*, 136 S. Ct. at 1549). At the pleading stage, however, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (quoting *Lujan*, 405 U.S. at 561) (alteration in original). Economic injury is "clearly a sufficient basis for standing." *Id.* at 1069 ("[Economic injury] is a quintessential injury-in-fact."); *San Diego Cty. Guns Rights Comm. v. Reno*, 98 F.3d 1121, 1130 (9th Cir. 1996).

Defendants contend, and the Court agrees, that Plaintiff has alleged an injury-in-fact

Case No.: 5:19-cv-01225-EJD
ORDER DENYING MOTION TO REMAND; GRANTING MOTION TO COMPEL
7

because his UCL claim, which is premised on the FCRA violations, asserts an economic injury, *i.e.* "Plaintiff *lost money or property* as a result of the aforementioned unfair competition." Remand Opp. at 8 (citing Compl. ¶ 181) (emphasis added); *see also Maya*, 658 F.3d at 1068. The UCL prohibits "unfair competition;" meaning "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Plaintiff asserts that Defendants violated the UCL because they violated "[f]ederal and California laws requir[ing] certain disclosures and proper authorization before conducting background checks and obtaining information from credit and background reports in connection with a hiring process." Compl. ¶ 177. Plaintiff alleges *this* unlawful conduct amounted to "unfair competition." *See, e.g.*, *id.* ¶¶ 181–82. Plaintiff expressly alleges he "lost money or property as a result of the aforementioned unfair competition," which includes both FCRA claims. *Id.* ¶ 181. Accordingly, while Plaintiff alleges only "bare procedural harm" in his FCRA causes of action,[4] he has re-alleged that he suffered an economic injury from the violations within the UCL section of the Complaint. *See Rodriguez v. U.S. Healthcare, Inc.*, 388 F. Supp. 3d 1095, 1102 (N.D. Cal. 2019) (concluding, under identical circumstances, complaint plead an injury-in-fact).

      The Court thus holds that because Plaintiff has pled Article III standing as to the FCRA claims, this Court has federal-question jurisdiction. Further, because the economic injury alleged relates to all causes of action asserted, Plaintiff has pled standing as to the other related state-law claims. Because these claims "arise out of the same case or controversy" as the FCRA claim, the Court also has supplemental jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. § 1367(a); *see also Swamy v. Title Source, Inc.*, 2017 WL 3021042, at *4 (N.D. Cal. July 17, 2017) (finding supplemental jurisdiction because claims all arose "out of a cohesive narrative:

---

[4] This conclusion accords with other decisions from this District. *See, e.g.*, *Williams v. Nichols Demos, Inc.*, 2018 WL 3046507 (N.D. Cal. June 20, 2018) (holding only bare procedural violation of FCRA pled because failed to allege any concrete harm flowing from the violation). The decisions, like *Williams*, which Plaintiff cites, do not address the UCL claim realleging an injury-in-fact for the FCRA violations. *Cf.* Remand Mot. at 9–10; Remand Reply at 6–8. Accordingly, the case law Plaintiff cites as support is unhelpful in this context because the complaints in those cases were drafted such that Plaintiff did not plead an injury in fact. *See* Remand Opp. at 9–10.

Case No.: 5:19-cv-01225-EJD
ORDER DENYING MOTION TO REMAND; GRANTING MOTION TO COMPEL
8

defendant's conduct towards plaintiff in his capacity as an employee"). Accordingly, Plaintiff's motion to remand is **DENIED**.

### III. MOTION TO COMPEL ARBITRATION

#### A. Legal Standard

The Federal Arbitration Act ("FAA") governs the agreement between the Parties. Collins Decl., Ex 2 at 7. Under the FAA, written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the avoidance of any contract." 9 U.S.C. § 2. The FAA removes the district court's discretion and mandates that courts direct the parties to "proceed to arbitration on issues as to which an arbitration agreement has been signed." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)). The FAA establishes a "liberal federal policy favoring arbitration agreements." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018). Courts must "rigorously . . . enforce arbitration agreements according to their terms, including terms that specify *with whom* the parties choose to arbitrate their disputes and *the rules* under which the arbitration will be conducted." *Id.* Any doubts must be resolved in favor of arbitration. *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003).

The Court's role is limited to deciding (1) whether is there a valid agreement to arbitrate and (2) if yes, whether the agreement encompasses the dispute at issue. *Chiron Corp.*, 207 F.3d at 1130. If both are answered in the affirmative, the court must compel arbitration. 9 U.S.C. §§ 2–4.

#### B. Discussion

Plaintiff argues that the arbitration agreement is unenforceable because the 2013 agreement is procedurally and substantively unconscionable. He further argues that the 2015 Program cannot apply retroactively and eradicate the alleged unconscionability of the 2013 agreement. As an initial matter, therefore, the Court must determine which agreement governs the Parties.

**1. The 2015 Program Covers Plaintiff's Claims**

Plaintiff argues that California law, which this Court must use to determine whether an arbitration agreement exists, does not permit retroactive changes to an arbitration agreement.

Case No.: 5:19-cv-01225-EJD
ORDER DENYING MOTION TO REMAND; GRANTING MOTION TO COMPEL
9

Arbitration Opp. at 22; *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("[C]ourts . . . should apply ordinary state-law principles that govern the formation of contracts."). Plaintiff further contends that even if California law allows retroactive application, the 2015 modifications are inapplicable because they "do not expressly provide for retroactivity." *Id.* at 23. Plaintiff states that in this district, for an arbitration agreement to apply retroactively, it must have "clear and unambiguous language specifically stating that it applied retroactively." *Id.* (citing *Trudeau v. Google LLC*, 349 F. Supp. 3d 869, 877 (N.D. Cal. 2018)).

Plaintiff misunderstands *Trudeau*; there, the court, opposite to Plaintiff's contention, held that an arbitration agreement "need not apply retroactively in order to cover previously accrued claims." 349 F. Supp. 3d at 878. The parties were disputing the application of Section 13(A) of the agreement. *Id.* at 877. Section 12 of the agreement stated, "other than changes made under Section 13(G), the changes to the Terms will not apply retroactively." *Id.* The plaintiff argued that Section 12 thus meant amendments to the agreement outside Section 13(G) did not apply retroactively. *Id.* Instead of reading Section 13(A) in light of Section 12, Judge Freeman looked to "the plain language of [Section 13(A)]." *Id.* at 878; *see also id.* (noting using terms like retroactive application" only "muddies" the determination of whether the arbitration provision applies). The plain language of Section 13(A) expressly covered "claims that arose *before*" the section was amended. *Id.* (emphasis added). Thus, in order for amendments to an arbitration agreement to apply retroactively, they need not explicitly use the term "retroactively." *Id.*

Likewise, here, the 2015 Comcast Solutions Program covers claims that arose *before* the 2015 amendments: it covers "claims *related to* or arising from *any* aspect of the employment relationship." Collins Decl., Ex. 10 at 2 (emphasis added); *see also Sanfilippo v. Tinder, Inc.*, 2018 WL 6681197, at *5 (C.D. Cal. Dec. 18, 2018) ("[T]he addition of 'in connection with' after the initial clause '*arising out of*' seems to extend the scope of the Agreement well beyond present or future disputes." (emphasis added)). The language "arising out of *relating to*" and "*any* dispute or controversy" make the Program's coverage of the employment relationship "very broad and inclusive." *Smith v. Vmware, Inc.*, 2016 WL 54120, at *6 (N.D. Cal. Jan. 5, 2016). The 2015

Case No.: 5:19-cv-01225-EJD
ORDER DENYING MOTION TO REMAND; GRANTING MOTION TO COMPEL
10

Program, like the one in *Trudeau*, is open-ended; it has no temporal limitation on the scope of claims. *See Jones v. Deja Vu, Inc.*, 419 F. Supp. 2d 1146, 1150 (N.D. Cal. 2005) ("Where an arbitration provision does not contain a temporal limitation, the parties may be compelled to arbitrate despite the fact that the challenged conduct predates the signing of the agreement."). Therefore, by its plain terms, the 2015 Program applies to claims accrued prior to its enactment and covers the claims asserted herein.[5]

### 2. There Is a Valid Arbitration Agreement

Plaintiff does not argue the 2015 Program is unconscionable. To the contrary, Plaintiff spends pages analyzing why the 2013 agreement is unconscionable as compared to the 2015 Program. *See* Arbitration Reply at 2 ("Plaintiff dedicates multiple pages of his Opposition to *why* the 2015 Comcast Solutions Program passes muster." (citing Arbitration Opp. at 19–22)). Plaintiff bears the burden of proving the agreement is both procedurally *and* substantively unconscionable. *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002). To the extent Plaintiff even addresses unconscionability of the 2015 Program, he cannot meet his burden of showing both. He was given meaningful opportunity to opt out of the agreement and certified that he had read the agreement. *See, e.g.*, *Kilgore v. KeyBank Nat'l Ass'n*, 718 F.3d 1052, 1059 (9th Cir. 2013) (holding arbitration provision not procedurally unconscionable if signatories able to opt out). Accordingly, because Plaintiff cannot show procedural unconscionability, the agreement is valid.[6]

---

[5] Plaintiff's citation to *Peleg v. Neiman Marcus Group, Inc.*, 140 Cal. Rptr. 3d 38 (Ct. App. 2012) and *Cobb v. Ironwood Country Club*, 183 Cal. Rptr. 3d 282 (Ct. App. 2015) is unavailing. Remand Opp. at 22. As the *Trudeau* court noted, these cases were concerned with "potentially illusory contract terms by which an employer could change the terms of the arbitration provision at any time, even after a dispute had arisen." 349 F. Supp. 3d at 880. The cases were inapplicable because Google notified plaintiffs of proposed changes and thus did not "unilaterally change" the arbitration agreements. *Id.* at 881. Likewise, here, Defendants notified employees of the proposed changes and allowed them a reasonable opportunity to opt-out of the changes. Collins Decl. ¶¶ 15–16.

[6] To this extent, Plaintiff also cannot show substantive unconscionability because the three steps are no longer required and thus Defendants cannot get a "sneak peek" at Plaintiff's claims. *See* Arbitration Opp. at 17–18.

Case No.: 5:19-cv-01225-EJD
ORDER DENYING MOTION TO REMAND; GRANTING MOTION TO COMPEL
11

### 3. Plaintiff's Claims Are Within the Scope of the Agreement[7]

Having decided the 2015 Program applies, Plaintiff's argument that the FCRA and analogous state-law claims are outside the agreement is not persuasive. Arbitration Mot. at 18. The 2015 Program removed the exclusion of "[c]laims for . . . unauthorized use or disclosure of confidential, trade secret or private information under statutory or common law." Collins Decl., Ex. 10 at 2–3. Now, by its terms, the 2015 Program covers the exact federal and state violations claimed. *Id.* Further, the claims excluded is an exhaustive list, and the claims at hand do not appear on that list. *Id.* at 3. Accordingly, Plaintiff's claims are within the scope of the 2015 Program.

Finally, Plaintiff argues he is not covered by this 2015 Program because he did not consent to it. Arbitration Opp. at 2–3 ("There is no evidence that Plaintiff actually reviewed the contents of the revised Comcast Solutions program. . . . Although Plaintiff acknowledged that he 'reviewed' and 'understood' the [2015 Program], he did not expressly consent to it."). Plaintiff misunderstands the standard. Through his electronic acknowledgment, he did expressly consent to the Program and agreed to the updated arbitration provisions. *Craig v. Brown & Root, Inc.*, 100 Cal. Rptr. 2d 818, 821 (Ct. App. 2000) (holding binding arbitration agreement when employer mailed documents to employee's home and they had not been returned despite employee's protestations that she had not received it); *Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437, 1439–40 (9th Cir. 1994) (holding arbitration agreement binding because put in employee handbook). Further, by his continued employment, he implicitly accepted the terms. *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1093 (9th Cir. 2014) ("Where an employee continues in his or her employment after being given notice of the changed terms or conditions, he or she has accepted those new terms or conditions."). Accordingly, Plaintiff is bound by the 2015 Program.

---

[7] The Court acknowledges Defendants' argument that the terms of the arbitration agreement delegate to the arbitrator the issue of claim coverage. Arbitration Reply at 5. The test established by the Ninth Circuit, however, sets forth a two-step inquiry: (1) is there a valid agreement and (2) are the claims at hand within the scope of that agreement. *Chiron Corp.*, 207 F.3d at 1130. This Court does not view this case as the appropriate case to determine whether the second part of this test can be contracted around.

Case No.: 5:19-cv-01225-EJD
ORDER DENYING MOTION TO REMAND; GRANTING MOTION TO COMPEL
12

**4. The Class Action Waiver is Enforceable**

Plaintiff waived his right to bring a class action. Collins Decl., Ex. 10 at 9. Class action waivers are enforceable where an employee has an opportunity to opt out. *Garcia v. Comcast Cable Commc'n Mgmt. LLC*, 2017 WL 1210044, at *4 (N.D. Cal. Mar. 31, 2017).

Here, Plaintiff had the option to opt out. Collins Supp. Decl. ¶ 2. Despite having five-weeks to opt-out, Plaintiff never opted out of the Program. *Id.* Accordingly, because Plaintiff had an opt-out option, the class action wavier is enforceable.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand is **DENIED** and Defendants' motion to compel arbitration is **GRANTED**. Plaintiff shall arbitrate his claims on an individual basis, rather than on a class, collective, or representative basis. This case is **STAYED** pending resolution of the arbitration proceedings. The Clerk shall administratively close the file. The Parties shall notify the Court within seven days of an arbitration ruling.

**IT IS SO ORDERED.**

Dated: October 11, 2019

_____
EDWARD J. DAVILA
United States District Judge

Case No.: 5:19-cv-01225-EJD
ORDER DENYING MOTION TO REMAND; GRANTING MOTION TO COMPEL
13